IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINCOLN GENERAL INSURANCE
COMPANY,

               Plaintiff,

        v.

JOSEPH T. RYERSON & SON,
INC., *et al.*,

             Defendants.

Case No. 14 C 8446

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss filed by Plaintiff Lincoln General Insurance Company ("Lincoln"). The first seeks dismissal of Defendant Illinois National Insurance Company's affirmative defenses and counterclaims [ECF No. 38], and the second seeks dismissal of Defendant Travelers Property Casualty Company's affirmative defenses and counterclaims [ECF No. 41]. For the reasons stated herein, the Court denies the first Motion [ECF No. 38], and denies the second Motion [ECF No. 41], except to the extent that it seeks to strike Travelers' first and fifth affirmative defenses.

## I.  BACKGROUND

This case is about who is responsible for paying the $27 million that a state-court jury awarded to the Hoffmans in the underlying personal injury suit. The evidence in that suit

established that the Hoffmans were struck by a semi-truck driven by Dorlan Crane. The jury specifically found that Crane was driving the semi as an agent of a joint venture between Illinois State Motor Service, Inc. ("Illinois State"), 3pL Corporation, and Joseph T. Ryerson & Son, Inc. ("Ryerson"), all of which were defendants in the underlying suit. Although the jury found there was a joint venture and that Crane was the joint venture's agent, it appears that Crane was initially hired by Illinois State to drive the semi. The jury awarded the Hoffmans approximately $27 million, and the Illinois Court of Appeals affirmed.

The issues in this case have little to do with the underlying suit. Instead, the various insurance companies are battling over who owes what. Lincoln General, Plaintiff in this case, issued an insurance policy to Illinois State, and pursuant to that policy, Lincoln General hired a law firm to defend Illinois State in the underlying action. Lincoln General also provided a defense for Crane, presumably because Crane was covered under the policy's definition of "insured," which includes anyone who drove one of the policy's covered cars with Illinois State's permission. (Compl., ECF No. 1 ¶ 27). Travelers, Defendant in this case, issued a policy to Ryerson, defended Ryerson during the underlying action, and ultimately paid about $3.6 million on behalf of Ryerson in partial

satisfaction of the judgment. Illinois National, another Defendant in this case, also issued a policy to Ryerson and indemnified Ryerson for some of the judgment and post-judgment interest.

After the underlying action concluded, Lincoln General filed its federal Complaint, seeking a declaration that it is not obligated to indemnify Ryerson for payments already made and that it is not obligated to pay any additional payments on Ryerson's behalf. Illinois National and Travelers answered the Complaint asserting various defenses and counterclaims. Both counterclaims seek a declaration that Ryerson is an insured under Lincoln General's policy and both include claims of contractual subrogation and estoppel. Also, both answers contain the affirmative defenses of actual notice and estoppel. In addition to these overlapping claims, Illinois National's counter-claim includes a count for equitable subrogation, while Travelers' includes counts for waiver and equitable contribution. Finally, Travelers' answer includes the affirmative defenses of "failure to state a claim" and "reservation to assert additional defenses," while Illinois National's includes the affirmative defense of "compliance with policy conditions." Lincoln General now moves to dismiss Illinois National's and Travelers' counter-claims and affirmative defenses.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir. 1987).  A court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

The overriding focus in the Court's analysis is notice — that is, whether the factual allegations in the complaint "give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Indiana,* No. 14-1729, 2015 WL 2151851, at *3 (7th Cir. May 8, 2015) (quoting *Johnson v. City of Shelby,* 135 S.Ct. 346, 347 (2014)).  And, because "affirmative defenses are pleadings," they are subject to "all

- 4 -

pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Thus, most courts in this district have applied the plausibility standards in *Twombly* and *Iqbal* to affirmative defenses. *Naylor v. Streamwood Behavioral Health Sys.,* No. 11 C 50375, 2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (collecting cases).

### III.  ANALYSIS

Both of Lincoln General's Motions contain similar attacks and rely on the same cases and arguments. Thus, the Court will consider both motions in tandem. Lincoln General's overarching contention is that Ryerson never tendered its defense to Lincoln General, thereby absolving Lincoln General of all responsibility. Based on this contention, Lincoln General sets forth three main arguments for why the Court should grant its motion: (1) Illinois National and Travelers waived their claims against Lincoln General; (2) the allegations in the counter-claims do not show that Lincoln General had a duty to defend Ryerson because actual notice is not enough; and (3) neither Illinois National nor Travelers have adequately pleaded estoppel.

### A.  Waiver

Lincoln General first argues that Illinois National and Travelers waived their counter-claims. This is so, according to

Lincoln General, because Illinois National and Travelers waited about ten years before informing Lincoln General that they intended to hold it responsible for Ryerson's portion of the judgment. Illinois National and Travelers both respond by arguing that they need not plead around Lincoln General's waiver argument because waiver is an affirmative defense that Lincoln General must plead and prove. The Court agrees with Illinois National and Travelers.

Insurance companies run the risk of waiving their rights based on their conduct in the underlying litigation. *See, Home Ins. Co. v. Cincinnati Ins. Co.,* 821 N.E.2d 269, 282 (Ill. 2004). "Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Id.* "[W]aiver may be either expressed or implied," and "[a]n implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Id.* Under Rule 8(c), however, waiver is an affirmative defense. Thus, it will be up to Lincoln General to gather facts and ultimately prove, at summary judgment or at trial, that Illinois National and Travelers waived their rights. Lincoln General may ultimately be correct that Illinois National and Travelers sat on their rights too long, but that is a merits issue that the Court cannot decide at the motion to dismiss stage.

## B.  Actual Notice

Lincoln General also argues that, even accepting Illinois National and Travelers' allegations as true, their counter-claims must fail because Lincoln General's actual knowledge of the underlying suit is not sufficient to trigger a duty to defend.  And, if there is no duty to defend, then there cannot possibly be any duty to indemnify, and Illinois National's and Travelers' complaints must be dismissed.

Under Illinois law, there is a key difference between having a duty to defend and triggering that duty.  *See, Home Ins. Co. v. U.S. Fid. and Guar. Co. ("Home"),* 755 N.E.2d 122, 131–32 (Ill. App. Ct. 2001).  As to the existence of the duty, courts simply look to the allegations in the complaint — or here, the counter-claim — and compare those allegations to the policy.  *Id.*  "If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend."  *Id.* (internal quotation marks omitted).

As to triggering the duty to defend, courts look to when the insurer knew (or should have known) that it was obligated to defend the insured.  *See, id.*  The easiest way for an insured to trigger the duty to defend is to tender the defense of the underlying action to the insurer.  When this happens, there is no doubt as to when the insurer first had notice that it might be obligated to defend the insured.

But tendering the defense is not the only way for the duty to defend to be triggered; the duty is also triggered if the insurer has "actual notice." *Id.* An insurer has actual notice only when two conditions are met: "the insurer must know . . . that a cause of action has been filed against its insured and that the complaint falls within or potentially within the scope of the coverage of one of its policies." *Id.* (internal quotation marks and alterations omitted). In most cases, knowledge of the underlying action, by itself, is not enough. *Pekin Ins. Co. v. Fid. & Guar. Ins. Co.,* 830 N.E.2d 10, 20 (Ill. App. Ct. 2005).

The issue in this case is how Illinois law regarding actual notice applies to omnibus insurance provisions, which are coverage provisions that could include anyone as an "insured," provided they satisfy the condition in the omnibus provision. The classic example of an omnibus provision is the permissive driver provision often found in car insurance policies, where the definition of "insured" includes anyone driving a covered car with the named insured's permission.

Lincoln General argues that, even assuming it had a duty to defend, that duty was never triggered because the actual notice rule does not apply to omnibus insureds. But the cases Lincoln General relies upon show that the rule can apply in the omnibus insured context. For example, Lincoln General relies heavily on

*Home,* which thoroughly discussed the actual notice rule. *Home,* 755 N.E.2d at 131–35. In that case, the underlying liability lawsuit involved a tractor-trailer operator who "was killed when a 96,000-pound concrete beam he was hauling dislodged from its trailer moorings and crashed through [his] cab." *Id.* at 125. The operator was driving the truck for a company called Transmedical Inc., which was hired to provide a driver for subcontractors A&M Cartage of Tinley Park, Inc. and Tri Sons Transportation, Inc. *Id.* The subcontractors themselves were hired by Prestress Engineering Corporation ("PEC") to deliver the beam from PEC to a bridge-building job site. *Id.* The operator's estate sued PEC as the designer and owner of the trailer that pulled the beam and the two subcontractors as providers of the tractor (and its cab) in which the operator was killed. *Id.*

PEC was an insured under a Home Insurance ("Home Ins.") policy, while one of the subcontractors was a named insured under a U.S. Fidelity and Guaranty ("USF&G") policy. *Id.* at 126. Although the lawsuit was filed in 1993, PEC waited until 1997 to send USF&G a letter asserting that PEC was also an insured under the USF&G policy. *Id.* PEC was neither a named insured nor an additional insured; instead, PEC considered itself an insured under USF&G's omnibus provision. *Id.*

While awaiting USF&G's response to the letter, Home Ins. filed suit against USF&G and the operator's estate, seeking a declaration that USF&G had a duty to defend PEC and that it breached that duty by refusing to defend. *Id.* USF&G answered the complaint and raised the affirmative defenses of late tender and breach of the policy's cooperation clause. *Id.* Home Ins. then moved to strike those affirmative defenses and for judgment as a matter of law. *Id.* The trial court denied both motions, finding that USF&G had no duty to defend PEC. *Id.* Home Ins. appealed. *Id.*

On appeal, the Illinois Court of Appeals reversed and found that USF&G had a duty to defend PEC. *Id.* at 131. The USF&G policy's omnibus provision defined "insured" as anyone who owned a trailer that the subcontractor "hire[d] or borrow[ed]." *Id.* at 127. The court looked solely at the policy's language and the allegations in the complaint and found that the allegations potentially gave rise to coverage because they showed that the subcontractor borrowed or hired PEC's trailer. *Id.* at 131. Thus, USF&G had a duty to defend PEC. *Id.*

As to the triggering of USF&G's duty to defend, Home Ins. argued that the actual notice rule applied and that USF&G had actual notice in 1993 when the lawsuit was first filed. *Id.* at 132. This was so, according to Home Ins., because USF&G was defending its own named insured in the same lawsuit and it also

knew that PEC was a defendant. *Id.* Relying largely on the Illinois Supreme Court's decision in *Cincinnati Cos. v. West Am. Ins. Co. ("Cincinnati"),* 701 N.E.2d 499 (1998), Home Ins. argued that those two facts put USF&G on notice that PEC was potentially one of its insured. *Id.*

USF&G responded by arguing that the actual notice rule did not apply because that rule only applies when the notice involves a named insured or an additional insured. *Id.* Unlike the insured at issue in *Cincinnati,* PEC was neither a named insured nor an additional insured on the USF&G policy. *Id.* Thus, according to USF&G, it did not have actual notice that PEC was a potential insured simply because it knew of the underlying lawsuit. *Id.*

The court found that there was a factual issue as to whether USF&G had actual notice. *Id.* at 134. The court found that there are two prongs to actual notice that both must be satisfied: notice of the lawsuit *and* notice that the complaint potentially falls within coverage. *Id.* The court agreed with USF&G that because PEC was not a named insured or additional insured, USF&G's knowledge of the underlying suit and PEC's status as a defendant in that suit was not enough to satisfy the second prong. *Id.* The issue was not when USF&G had notice of the underlying suit (*i.e.,* the first prong); rather, the issue was when USF&G had notice that PEC might be covered by the

omnibus provision (*i.e.,* the second prong). *Id.* The court found judgment as a matter of law inappropriate because when USF&G knew that PEC might be covered was a factual issue that must be decided at trial or summary judgment. *Id.* The court therefore remanded the case for resolution of that issue. *Id.*

The court went on to note that the actual notice issue was a prerequisite to any determination of subrogation or estoppel. *Id.* at 135. For example, whether estoppel would apply and against whom it would apply necessarily turns on when USF&G had actual notice regarding its duty to defend PEC. *Id.* If USF&G had notice back in 1993 and did nothing to defend PEC, USF&G might be estoped from disputing coverage. *Id.* If, on the other hand, USF&G did not have actual notice until 1997, then Home Ins. might be estopped from seeking satisfaction from USF&G since Home Ins. would have effectively robbed USF&G of its opportunity to control PEC's defense. *Id.* Either way, the court found that the trial court could only reach the estoppel issue after first resolving the actual notice issue. *Id.* at 136. The same was true for the subrogation issues. *Id.*

This case is remarkably similar to *Home.* Like USF&G in that case, here Lincoln General argues that the actual notice rule does not apply because the insured at issue (Ryerson) is not a named insured or additional insured. But the actual notice rule applies even in cases that do not involve named or

additional insureds. *Id.* at 131–35. The only difference between the two types of cases is that, in the case of named or additional insureds, mere notice of the underlying suit alone might be enough to satisfy both actual notice prongs. *See, id.* In contrast, when the provision at issue is an omnibus clause, mere knowledge of the underlying suit alone is not enough; the insurer must also have actual notice of the insured's potential coverage under the provision. *Id.*

Also, like Home Ins.'s argument in *Home,* here Lincoln General might ultimately be right on the merits in arguing that it had no actual notice of Ryerson's potential coverage claim until ten years after the underlying lawsuit was filed. If that is so, then Illinois National and Travelers might be estopped from going after Lincoln General now because their delay effectively robbed Lincoln General from controlling Ryerson's defense. If, on the other hand, Lincoln General had actual notice when the underlying suit was filed, estoppel might apply against Lincoln General for failing to take any action as to Ryerson until filing this declaratory judgment action. *See, id.* Either way, this is a factual issue that cannot be resolved at the motion to dismiss stage. *See, id.*

## C. Travelers' First and Fifth Affirmative Defenses

The Court need not address most of Lincoln General's remaining arguments because resolution of those issues

necessarily depends on first resolving the actual notice issue. For example, Lincoln General asks the Court to strike Travelers' affirmative defenses of estoppel and waiver. But the Court cannot determine whether those defenses have any merit until the actual notice issue is first resolved, as discussed above. Thus, the Court cannot dismiss those defenses at this stage. *See, id.* at 136 (affirming trial court's denial of motion to strike affirmative defenses because those issues necessarily turned on the unresolved actual notice issue).

Two defenses, however, can be resolved without regard to the actual notice issue. Travelers' answer includes two additional affirmative defenses that Illinois National's answer does not. Lincoln General asks the Court to strike these affirmative defenses as inadequate under the proper pleading standards. Travelers' first affirmative defense says, in its entirety, "Lincoln General's Amended Complaint for Declaratory Judgment fails to state a claim upon which relief can be granted." {Travelers' Answer, ECF No. 40 at 24). Although courts have reached different conclusions as to whether this type of "failure to state a claim" defense is appropriate as an affirmative defense, those courts that find such a defense proper at least require the defense to contain a short, plain statement as to why the complaint is deficient. *See, Jackson v. Methodist Med. Ctr. of Ill.,* No. 06-1235, 2007 WL 128001, at *2

(C.D. Ill. Jan. 11, 2007). Travelers includes no further allegations in this defense beyond simply stating the Rule 12(b)(6) standard. Thus, even if the Court found such an affirmative defense proper, which it does not, the Court would still strike the defense for failure to comply with Rule 8(a). *See, id.* Thus, Travelers first affirmative defense is stricken.

Travelers' fifth affirmative defense is simply a reservation of the right to assert more affirmative defenses at some unknown later time. Courts have found this type of reservation inappropriate because any amendment to a pleading is governed by Rule 15. *See, Ill. Wholesale Cash Register, Inc. v. PCG Trading, LLC,* No. 08 C 363, 2009 WL 1515290, at *2 (N.D. Ill. May 27, 2009). Should Travelers desire to amend its answer at a later time, "it may seek leave of court to do so." *Id.* But what Travelers cannot do is "hold the Court hostage to its inclination to later amend its pleadings." *Id.* (internal quotation marks and alteration omitted). Thus, the Court strikes Travelers' fifth affirmative defense.

## IV.  CONCLUSION

For the reasons stated herein, the Court hereby rules as follows:

1. Lincoln General's Motion to Dismiss Illinois National's counter-claim and affirmative defenses [ECF No. 38] is denied; and

2.  Lincoln General's Motion to Dismiss Travelers' counter-claim and affirmative defenses [ECF No.41] is denied, except to the extent that it seeks to strike Travelers' first and fifth affirmative defenses, which are hereby stricken.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: June 18, 2015